IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LAURA L., | ) |
| | ) |
| Plaintiff | ) Civil Action No. 7:20-CV-40 |
| | ) |
| v. | ) |
| | ) |
| ANDREW SAUL, Commissioner of | ) |
| Social Security, | ) By: Michael F. Urbanski |
| | ) Chief United States District Judge |
| | ) |
| Defendant | ) |

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation ("R&R") on February 17, 2021, recommending that plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and the Commissioner's final decision be affirmed. Plaintiff Laura L. ("Laura") has filed objections to the R&R and this matter is now ripe for the court's consideration.

## I. Background

Laura filed applications for disability insurance benefits and supplemental security income on January 16, 2017, alleging disability beginning on October 21, 2015. Laura was 30 years old at the alleged onset date. She seeks disability based on osteoarthritis and fibromyalgia, with a history of a right ankle fracture, obesity, cyclic vomiting, asthma, and depression/bipolar disorder. The ALJ found that her impairments were severe under the

regulations, but that none of them met or medically equaled a listed impairment. The ALJ found that Laura had the residual functional capacity ("RFC") to perform light work with the additional limitations of not operating any foot controls with her right foot, and only occasionally kneeling, crawling, crouching, stooping, balancing, or climbing. She could have only occasional exposure to pulmonary irritants. She was limited to performing simple, routine tasks in a job without strict production rate or pace requirements, and without exposure to hazards or unprotected heights.  A vocational expert testified that Laura could do her past relevant work as a parking lot attendant. Other representative jobs she could do included working as a mail clerk or inspector. The ALJ concluded that there was work in the economy for Laura and therefore she was not disabled. R. 15-33. The Appeals Council denied Laura's request for review, R. 1-3, making the ALJ decision the final decision of the Commissioner.

This lawsuit followed. The magistrate judge found that the ALJ determination was supported by substantial evidence and Laura has objected to several of the magistrate judge's findings.

## II. Standard of Review of Magistrate Judge Decision

The objection requirement set forth in Rule 72(b) of the Federal Rules of Civil Procedure[1] is designed to "train[ ] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with

---

[1] "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b).

sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622.

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id.

The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) and Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982)). "The district court is required to review de novo only those portions of the report to which specific objections have been made." Roach v. Gates, 417 F. App'x 313, 314 (4th Cir. 2011). See also Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. 2009), aff'd, 373 F. App'x 346 (4th Cir.) ("The court will not consider those objections by the

plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein."); Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only 'those portions of the report or specified proposed findings or recommendations to which objection is made.'") (emphasis in original). Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012). See also Arn, 474 U.S. at 154 ("[T]he statute does not require the judge to review an issue de novo if no objections are filed. . . .").

Rehashing arguments raised before the magistrate judge does not comply with the requirement set forth in the Federal Rules of Civil Procedure to file specific objections. Indeed, objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

4

Veney, 539 F. Supp. 2d at 846. A plaintiff who reiterates her previously-raised arguments will not be given "the second bite at the apple she seeks;" instead, her re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

## III. Judicial Review of Social Security Determinations

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).

Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

## IV. Plaintiff's Objections[2]

Laura makes the following objections to the magistrate judge's R&R: (1) The magistrate judge erred when he concluded that the ALJ properly considered her mental impairments under SSR 96-8p; (2) the magistrate judge erred in concluding that the ALJ properly assessed Laura's RFC and conducted a proper function-by-function analysis; and (3) the magistrate judge erred in concluding that the ALJ properly considered Laura's subjective allegations that her impairments rendered her unable to work at any job.

### A. Mental Impairments Under SSR 96-8P

The mental residual functional capacity ("RFC") assessment is discussed in Social Security Ruling 96-8p, which provides that when determining whether a claimant has a severe mental impairment at Step 2 of the sequential evaluation,[3] or meets a listing for a mental impairment at Step 3 of the sequential evaluation, the adjudicator assesses an individual's limitations and restrictions from a mental impairment in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The mental disorders

---

[2] Detailed facts about Laura's impairments and medical and procedural history can be found in the report and recommendation (ECF No. 24) and in the administrative transcript (ECF No. 9) and will not be repeated here except as necessary to address her objections.

[3] In conducting the sequential evaluation, the ALJ makes a series of determinations: (1) Whether the claimant is engaged in substantial gainful activity; (2) Whether the claimant has a medically determinable impairment that is "severe" under the regulations; (3) Whether the severe impairment or combination of impairments meets or medically equals the criteria of a listed impairment; (4) Whether the claimant has the RFC to perform his past relevant work; and (5) Whether the claimant is able to do any other work in the national economy, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a) and 416.920(a). If the ALJ finds that the claimant has been engaged in substantial gainful activity at Step 1 or finds that the impairments are not severe at Step 2, the process ends with a finding of "not disabled." Mascio v. Colvin, 780 F.3d 632, 634-635 (4th Cir. 2015). At Step 3, if the ALJ finds that the claimant's impairments meet or equal a listed impairment, the claimant will be found disabled. Id. at 635. If the analysis proceeds to Step 4 and the ALJ determines the claimant's RFC will allow him to return to his past relevant work, the claimant will be found "not disabled." If the claimant cannot return to his past relevant work, the ALJ then determines, often based on testimony from a vocational expert, whether other work exists for the claimant in the national economy. Id. The claimant bears the burden of proof on the first four steps and the burden shifts to the Commissioner on the fifth step. Id.

listings are set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526.

However, the limitations identified in the listing criteria are not an RFC assessment, and the mental RFC assessment used at Steps 4 and 5 of the sequential evaluation process requires a more detailed assessment "by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings." SSR 96-8p, 1996 WL 374184 at *4.

The adjudicator should consider the claimant's medical history, medical signs and laboratory findings, the effects of treatment, reported daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms that are reasonably attributed to a medically determinable impairment, evidence from attempts to work, need for a structured environment, and work evaluations, if available. SSR 96-8p, 1996 WL 374184 at *5. The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. Id. at *7.

The ALJ in this case first looked at whether Laura had an impairment that met or equaled a listed impairment and did so by examining the "B" and "C" criteria set out in the listings. R. 18-21. The ALJ then acknowledged that the limitations defined in the "B" criteria were not an RFC assessment but rather were an assessment of the severity of an impairment at Steps 2 and 3 of the sequential evaluation. The ALJ further acknowledged that the RFC assessment required a more detailed assessment. R. 21.

In doing the RFC assessment at Step 4, the ALJ summarized Laura's testimony at the hearing, reviewed the medical evidence in the record and the opinions of the state agency

psychological consultants and discussed Laura's activities of daily living. The ALJ found that Laura was limited to limited to simple, routine tasks in a job without a strict production rate or pace requirements. R. 22-30.

The ALJ found that further mental capacity restrictions were not warranted because notes from her treating practitioners showed that her mental status was normal at appointments except for routine findings such as a depressed or anxious mood, which would not be expected to cause significant functional limitation. Laura generally was noted to have normal insight, judgment, concentration, and memory at appointments. The ALJ also noted that she had mostly consistent psychiatric treatment and she usually reported that her medications adequately controlled her symptoms. The ALJ further found it significant that none of Laura's treating practitioners had placed limitations on her or suggested she was unable to work. Also, Laura reported feeling better mentally when she was employed and her counselor suggested she work more to increase her positive activities. The ALJ concluded that the RFC was supported by the medical evidence of record and also by the opinions of the State agency consultants and the consultative examiner. R. 30.

Laura argued to the magistrate judge that the ALJ found at Step 3 of the sequential evaluation that she had moderate limitations in understanding, remembering, or applying information, and in concentrating, persisting, or maintaining pace, but failed to explain how these limitations resulted in the RFC he assessed. Laura further argued that the ALJ failed to address Laura's ability to sustain work activity over the course of an eight-hour day. In addition, Laura questioned why the ALJ gave "great weight" to the opinion of state agency psychologist Dr. Leizer but did not adopt Dr. Leizer's finding that Laura had a moderate

limitation in interacting with others. Instead, the ALJ found that Laura had only a mild limitation in that domain.

### 1. Concentration, Persistence, and Pace

The magistrate judge found that the ALJ adequately supported his finding that Laura could sustain simple, routine tasks over a normal workday, because he noted that although she complained that she had trouble concentrating, the psychiatrist consistently described her as having good attention and concentration. The ALJ also referenced Laura's daily activities of doing household chores, raising children, and working part-time at Sonic which he found required some concentration, persistence, and pace. ECF No. 24 at 10-11. In addition, the ALJ gave significant weight to Dr. Leizer's opinion Laura had moderate limitations in concentration, persistence, and pace, but nevertheless found she could concentrate on simple tasks. Finally, the magistrate judge noted the ALJ's explanation that Laura was precluded from jobs with strict production rate or pace requirements because she testified to difficulty keeping up with constant demands during her five-hour shifts at her job. ECF No. 24 at 11, n.14 (citing R. 28). The magistrate judge concluded that substantial evidence supported that ALJ's conclusions regarding Laura's RFC as it related to her limitations in concentration, consistence, and pace.

Laura objects that the magistrate judge "pointed to specific findings by the ALJ regarding plaintiff's 'good attention and concentration' that do not exist on the pages of the ALJ decision cited by the Report and Recommendation." ECF No. 25 at 2. Laura is correct that the magistrate judge cited to R. 25-26 and 30 of the ALJ's report and that those pages do not contain the phrase "good attention and concentration." However, the court notes that the

psychiatrist stated on multiple occasions that Laura had "good attention and concentration." See, e.g., R. 695, 698, 701, 704, 707, 746. In addition, although the ALJ did not use those particular words at R. 25-26 or R. 30 of his decision, he did cite to Laura's psychiatric records showing that at a visit in August 2015 her mental status was mostly normal and she had appropriate affect and intact immediate memory, recent memory, remote memory, insight, judgment, attention, concentration, and fund of knowledge. The ALJ also cited to records from April 2016 when Laura reported an improved mood after starting BuSpar; to records from August 2016 when she reported her mood was fine and denied any psychiatric problems; to records from January 2017 when Laura reported feeling ninety-five percent better; and to records from March and April 2017 when Laura said her mood and anxiety symptoms were better and she again was described as having intact immediate memory, recent memory, remote memory, insight, judgment, attention, concentration, and fund of knowledge. R. 25-26. Thus, while the magistrate judge may have mistakenly stated that the ALJ quoted the phrase "good attention and concentration" from the notes of Laura's psychiatric visits at R. 25-26 and 30, the ALJ did cite to the psychiatric records in support of his RFC finding, and the psychiatrist noted on multiple occasions that Laura had "good attention and concentration."

Regarding Dr. Leizer's opinion that Laura had a moderate limitation in interacting with others, a finding not adopted by the ALJ despite the fact that the ALJ gave the opinion "significant weight," the magistrate judge found the ALJ expressly stated his reasons for deviating from Dr. Leizer's report. ECF No. 24 at 8 n.11. The magistrate judge also cited a portion of Dr. Leizer's report where he stated that Laura had moderate limitations in

concentration, persistence, and pace but that despite such limitations, she "[could] concentrate on simple, repetitive tasks." ECF No. 24 at 11.

Laura objects that Dr. Leizer did not make that finding and asserts that the magistrate judge made findings "not in existence in the record" and was attempting to help the ALJ build a logical bridge between the evidence and his RFC findings. ECF No. 25 at 2. However, the magistrate judge was correct. Dr. Leizer found that Laura had a moderate limitation in her ability to carry out detailed instructions, to maintain attention and concentration for extended periods, and to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. Next, when asked to explain in narrative form the sustained concentration and persistence capacities and or limitations, Dr. Leizer stated, "The claimant is able to concentrate on simple repetitive tasks." R. 134. The magistrate judge correctly described the record and correctly determined that the ALJ opinion regarding Laura's RFC and its accommodation of her moderate limitation in concentration, persistence, and pace is supported by substantial evidence.

### 2. Understanding, Remembering, and Applying Information

Laura also argued to the magistrate judge that the ALJ found that she had moderate limitations in understanding, remembering, and applying information, but failed to properly assess the impact of the limitations on her RFC. The magistrate judge noted that the ALJ acknowledged Laura's subjective allegations of poor memory, but also found that she did not typically complain to her treating practitioners about such symptoms. In addition, her mental status reports generally showed no serious deficits in long-term memory, short-term memory,

11

insight, and judgment. The ALJ also emphasized that Laura performs necessary household activities such as cooking, cleaning, and shopping and that she cared for two young children and worked part-time at a fast food restaurant, all of which indicate a basic level of understanding, remembering and applying information. ECF No. 24 at 11-12. Thus, the magistrate judge found that the ALJ properly accommodated Laura's limitations in the RFC.

Laura objects that it was error for the magistrate judge to point to the ALJ's description of her mental impairments at Step 3 of the sequential evaluation to support the RFC finding at Step 4, because the Step 4 evaluation requires a more in-depth assessment. However, an ALJ opinion is read as a whole. Keene v. Berryhill, 732 F. App'x 174, 176 (4th Cir. 2018). "A reviewing Court must read the ALJ's decision as a whole, meaning the decision should be affirmed even if the supporting discussion for a particular fact is found in a section of the decision covering some other aspect of the sequential review process." Morrison v. Saul, No. 3:20cv223, 2021 WL 795190, at *4 (W.D.N.C. March 2, 2021) (citing Smith v. Astrue, 457 F. App'x 326, 328 (4th Cir. 2011)). Additionally, an ALJ "need only review medical evidence once in his decision." McCartney v. Apfel, 28 F. App'x 277, 279 (4th Cir. 2002). See also Kiernan v. Astrue, No. 3:13CV459-HEH, 2013 WL 2323125, at *5 (E.D. Va. May 28, 2013) (observing that "where an ALJ analyzes a claimant's medical evidence in one part of his decision, there is no requirement that he rehash that discussion" in other parts of his analysis); Hawkins v. Berryhill, No. 2:16-cv-09131, 2018 WL 1557263 (S.D.W.V. Mar. 30, 2018) ("The ALJ did not err by relying on medical evidence that he had previously discussed in arriving at his credibility decision."); Timothy R. v. Berryhill, No. 19-cv-00915-JMC, 2020 WL 1974954 (D. Md. April

24, 2020) (rejecting argument that ALJ must analyze medical evidence at both the second and third steps of the five-step framework and also at each level of administrative review).

In Laura's case, the ALJ thoroughly reviewed the evidence at Step 3 of the evaluation and reviewed it in more detail at Step 4 of the evaluation. The fact that the ALJ or the magistrate judge referred to evidence at Step 3 when discussing Step 4 is not error and does not mean that the decision is not based on substantial evidence. The ALJ in Laura's case explained that he found that the statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. He cited to the fact that she cared for two young children, did most of the household chores, and worked at Sonic. Notes from her treatment providers usually showed her mental status examinations to be normal except for a depressed affect or anxious mood and that she generally had normal insight, judgment, concentration, and memory at appointments. Also, none of her treating practitioners had placed restrictions on her or stated that she is unable to work. R. 30.

The court agrees with the magistrate judge that the ALJ's opinion regarding Laura's mental RFC is supported by substantial evidence. Therefore, Laura's objection to the magistrate judge's finding on this issue is **OVERRULED**.

### B. Physical RFC

The process for assessing a claimant's RFC is set forth in Social Security Ruling 96-8P, 1996 WL 374184 (S.S.A. 1996). The ruling sets out in relevant part the following:

> The RFC must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and

416.945. Only after that may the RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

Id. at *1. Physical abilities set out in 20 C.F.R. 404.1545(b) and 416.945(b) include sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, handling, stooping, and crouching. Mental abilities set out in paragraph (c) of the regulation include understanding, remembering, and carrying out instructions, and responding appropriately to supervision, co-workers, and work pressures in a work setting. Other abilities set out in paragraph (d) of the regulation include those affected by skin impairments or epilepsy, impairment of vision, hearing, or other senses, or impairments which impose environmental restrictions.

In Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015), the Fourth Circuit rejected a per se rule requiring remand when the ALJ did not perform an explicit function-by-function analysis. The Mascio court found that remand may be appropriate when an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where the ALJ's analysis otherwise frustrates meaningful review.

Laura argued to the magistrate judge that the RFC did not impose limitations to account for her cyclical vomiting and that the ALJ determination was silent regarding the impact or non-impact of the cyclical vomiting on her ability to work. The magistrate judge found that the ALJ had acknowledged Laura's testimony that she sometimes had days where she vomited a lot and that medication did not completely resolve the issue. He also discussed her complaints of vomiting to her treatment providers. However, the ALJ noted that her complaints of vomiting were inconsistent and that she sought gastrointestinal treatment only a few times. In addition, the ALJ noted that treatment for the vomiting was conservative and consisted of recommendations to stop smoking marijuana and to change her diet and the

14

timing and dosage of her medication. The ALJ also found that there was no evidence, beyond Laura's testimony, that such symptoms interfered with her work at Sonic. In addition, the consultative examiner acknowledged her complaints of vomiting, but nonetheless found that she could work with some exertional limitations. ECF no. 24 at 13-14.

Laura objects that the ALJ and the magistrate judge ignored evidence in the record documenting she had more visits for her cyclical vomiting than acknowledged and that she consistently complained of vomiting that was not alleviated with treatment. In support of this objection, she cited to R. 384-385, 694, 796, 1064-1065, 1070-1071, 1293, 1305, and 1314, which were notes of visits with health care providers where she reported frequent vomiting. It is well-established that an ALJ is not required to discuss every piece of evidence in the record. Reid v. Commissioner, 769 F.3d 861, 865 (4th Cir. 2014). Nonetheless, the ALJ cited to most of this evidence in his analysis. He noted her subjective allegations of vomiting, R. 22; her complaints of vomiting to the consultative examiner, R. 22, 796; complaints of nausea and vomiting on February 23, 2017, R. 24, 384-385; complaints of occasionally vomiting shortly after taking medications, R. 24, 1064-1065; vomiting after she missed her GERD medications, R. 25; and a medication change in May 2018 to attempt to reduce vomiting, R. 26, 1299, 1293, 1305.

Laura does not point to anything in the evidence she cited which might have affected the ALJ's decision. The record shows that the ALJ acknowledged Laura's cyclical vomiting but based on the record, concluded that it did not affect her ability to work. The court agrees with the magistrate judge that that the ALJ's decision that the vomiting did not need to be accommodated in her RFC is supported by substantial evidence.

Laura also complained to the magistrate judge that the ALJ failed to conduct a function-by-function analysis and failed to make any specific findings regarding her need to frequently change positions or to lie down during the day and consequently, failed to present a proper hypothetical to the vocational expert. The magistrate judge found that the ALJ's decision included the narrative discussion required by SSR 96-8p and contained sufficient information to allow meaningful review. Specifically, the ALJ did not find Laura's complaints that she gets intermittent back pain if she stands up for more than twenty minutes at a time and her reports of joint and ankle pain consistent with her reports of caring for her children, doing housework, shopping, and working part-time at Sonic where she is on her feet for five hours at a time. In addition, the ALJ cited to the reports from the State Agency physicians that Laura could walk, sit, and stand for six hours in an eight-hour day and the report of the consultative examiner that Laura had no significant problems that would prevent her from walking and standing.

Laura objected that the ALJ did not explain how her part-time work at Sonic undermined her complaints regarding her need to change positions and lie down because she worked only for five hours at a time anywhere from one to five days per week and she testified that she could not work on a full-time basis. Laura also objects that the magistrate judge pointed to the ALJ's citation of a note where Laura said she felt better when she is able to go to work but did not acknowledge that her statement did not undermine her allegations because she clearly stated she felt better when "she was able to go to work," which was consistent with her allegations.

However, as found by the magistrate judge, the ALJ explained that he arrived at his RFC based in part on his determination that Laura's testimony that she could not work full-time was inconsistent with the medical evidence, the opinion evidence, and Laura's activities of daily living. To be sure, there are conflicts between Laura's testimony and the evidence, but such conflicts are for the ALJ and not the court to resolve. In addition, the court notes that Laura's comment about feeling better when she was able to go to work was made in the context of her telling a treatment provider that she had to be off work while her children were home and that she feels better when she is able to go to work. "She feels tired and her legs ache from her [fibromyalgia] but she feels better for being active and productive." R. 1225. Nothing about the note is inconsistent with the ALJ's RFC determination.

The court agrees with the magistrate judge's assessment that the ALJ's physical RFC determination in Laura's case is supported by substantial evidence. The ALJ adequately supported his determination with citations to the record and explained his conclusions. Accordingly, Laura's objection to magistrate judge's finding is **OVERRULED**.

### C. Subjective Allegations

The regulations that were in effect at the time Laura filed her claim provided the following discussion of how the Social Security Administration analyzes subjective allegations of symptoms:

> In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence, and other evidence. By objective medical evidence, we mean medical signs and laboratory findings as defined in § 416.928(b) and (c). By other evidence, we mean the kinds of evidence described in §§ 416.912(b)(2) through (8) and 416.913(b)(1), (4), and (5), and (d). These include statements or reports from you, your treating or nontreating source, and others about your medical history, diagnosis, prescribed

treatment, daily activities, efforts to work, and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work . . . . We will consider all of your statements about your symptoms, such as pain, and any description you, your treating source or nontreating source, or other persons may provide about how the symptoms affect your activities of daily living and your ability to work . . . . However, statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled. In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings and statements about how your symptoms affect you. . . . We will then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work . . . .

20 C.F.R. § 416.929 (2011).

Laura's subjective complaints include intermittent pain in her ankles, knees, and wrists, constant pain in her left foot, occasional pain in her back, muscle spasms at night, trouble concentrating, and vomiting. R. 51-53, 53-54, 57, 58-59. As discussed above, the ALJ did not find her subjective complaints consistent with the medical evidence or opinion evidence in the record, or with her reported activities of daily living.

Laura argued to the magistrate judge that the ALJ ignored objective evidence in the record that supported her allegations of disabling symptoms, such as the fact that her mental health practitioner found her to have a depressed mood and affect and that even after treatment, she continued to have decreased strength and ankle stability and difficulty with balancing. She also had tibial pulses that were thready on the right and diminished deep tendon

reflexes in her knees, ankles, and upper extremities. Laura also cited to the evidence in the record related to her cyclical vomiting.

The magistrate judge pointed out that the ALJ acknowledged Laura's subjective complaints and adequately explained why he found some of her complaints inconsistent with the other evidence in the record. Regarding the vomiting, the ALJ noted that Laura sought gastrointestinal treatment only a few times and there was no evidence that the vomiting interfered with her working at Sonic. He also cited to the conservative treatment recommended by her health care providers that she avoid marijuana, eat less greasy food, and change the timing and dosage of her medications. In addition, he pointed to evidence that Laura reported improvement with medication changes. The ALJ noted that the consultative examiner did not suggest that Laura's symptoms precluded her from work.

The magistrate judge found that when the ALJ addressed Laura's complaints of ankle pain, the ALJ summarized the history of Laura's ankle treatment and found that she reported the pain largely resolved by January 2017 and that she did not seek much further treatment. The ALJ also gave significant weight to the opinion of a State Agency physician who opined that Laura could do light work in spite of her symptoms. He also cited to her activities of daily living to find that she was not as limited by her impairments as her subjective allegations suggest. The magistrate judge made similar findings with regard to Laura's allegations of disabling mental impairments, i.e., that the ALJ supported his determination with citations to the evidence in the record.

Laura objects to the magistrate judge's conclusion and reasserts her earlier argument that the ALJ did not adequately address her symptoms of cyclical vomiting. However, as

discussed above, the ALJ cited most of the instances in the record describing Laura's reports of vomiting but did not find that the vomiting precluded her from work. Laura also objects that the ALJ ignored evidence in the record documenting that even after treatment, she continued to have decreased right ankle strength and stability, difficulty with balancing, and diminished deep tendon reflexes in her knees, ankles, and upper extremities. However, the ALJ cited to these records in his determination at R. 23 and R. 24. To the extent the evidence was inconsistent with other evidence in the records showing that Laura can do light work, it is up to the ALJ to resolve the conflicts in the record, as he did when he provided a thorough explanation of why he determined she could work despite some ankle pain.

Similarly, Laura argues that the ALJ ignored information from her mental health care providers that despite medication, she had only fair insight and judgment and needed continued support to assist her with her activities of daily living and her coping skills. However, again, an ALJ does not have to discuss every document in the record. Reid, 769 F.3d at 865. Moreover, Laura does not explain how an assessment of "fair" insight and judgment by a health care provider affects the ALJ's assessment of her subjective symptoms. The ALJ acknowledged that Laura has moderate limitations in her ability to understand, remember, and apply information and in her ability to concentrate, persist, or maintain pace and accounted for those limitations in the RFC. Laura advances no argument for why that assessment should be modified because she has been assessed as having only "fair" insight and judgment and none is apparent to the court.

Finally, Laura argued that remand in her case was called for by the holding in Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251 (4th Cir. 2017). In Brown, the Fourth Circuit

remanded a claim to the Social Security Administration in part because the ALJ listed a claimant's daily activities of cooking, driving, doing laundry, collecting coins, attending church, and shopping in support of the finding that the claimant was not disabled, but did not acknowledge the limited extent of the activities or explain how the activities showed he could sustain a full-time job. See also Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000) (observing that it is not enough for an ALJ to state in a conclusory manner that a claimant's testimony regarding limitations placed on his daily activities was unsupported by the medical evidence; rather, an ALJ must articulate "some legitimate reason for his decision" and "build an accurate and logical bridge from the evidence to his conclusion.").

In Laura's case, the magistrate judge found that the ALJ clearly understood Laura's limits in completing her activities of daily living, including specifically acknowledging that Laura works only up to fifteen hours per week and that while she does household chores, she has to take breaks and is assisted by family members. In addition, the magistrate judge noted that the ALJ relied on more than Laura's activities of daily living to find that she was not disabled. The ALJ cited to records from Laura's mental health treatment providers regarding her mental health status and symptoms and to the opinions of the State Agency doctors and the consultative examiner. The court agrees with the magistrate judge's conclusion that unlike in Brown, the ALJ in Laura's case did not rely only on her activities of daily living to find that his allegations of disabling impairment were not wholly consistent with the record.

Additionally, in Brown, the Fourth Circuit did not remand the case solely because the ALJ did not explain how Brown's limited activities indicated that he could work an eight-hour workday. Rather, the court found that the ALJ misstated the record regarding the claimant's

physical activities and the amount of pain he reported; misstated the effect of injections on the claimant's pain; misstated the claimant's testimony at the ALJ hearing; relied on his own observations and medical judgments in assessing the claimant's pain; and rejected the consistent opinions of the claimant's treating and examining sources in favor of the opinion of the non-examining state-agency physician. Brown, 873 F.3d at 263-266. None of those concerns are present in Laura's case.

The court finds that the ALJ thoroughly considered Laura's subjective allegations and "built the logical bridge" from his recitation of Laura's testimony about her activities to limiting her to light work with additional exertional and mental limitations. For this reason and the other reasons cited above, the court **OVERRULES** Laura's objection that that ALJ did not properly consider her subjective allegations of impairment.

## V. Conclusion

For the reasons stated, the court finds no error in the magistrate judge's conclusion that the ALJ decision is supported by substantial evidence. As such, the magistrate judge's report and recommendation will be adopted in its entirety.

An appropriate Order will be entered.

It is so **ORDERED**.

Entered: *March 23, 2021*

Michael F. Urbanski
Chief United States District Judge